UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **JORJA SANDERS JACKSON,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-11-S-4115-NW** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant, Jorja Jackson, commenced this action on December 6, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ's residual functional capacity finding was not supported by substantial evidence, in particular because the ALJ improperly considered the effect of claimant's obesity on her functional impairments. Upon review of the record, the court concludes that claimant's contentions are without merit, and the decision of the Commissioner is due to be affirmed.

The ALJ found that claimant had the severe impairments of type II diabetes mellitus, hypertension, obesity, sleep apnea, psoriasis, mild degenerative disk disease of the lumbar spine, and gastroesophageal reflux disease.[1]  Despite those impairments, the ALJ concluded that claimant retained "the residual functional capacity to perform the exertional demands of medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ladders, ropes, and scaffolds. She should avoid all exposure to hazards and avoid concentrated exposure to extreme cold and heat."[2]  With that residual functional capacity, claimant would be capable of performing her past relevant work as a school principal, assistant principal, and

---

[1] Tr. 31.
[2] Tr. 32.

2

teacher.[3]  Consequently, the ALJ found that claimant was not disabled under the Social Security Act.[4]

Claimant asserts that the ALJ's assessment of claimant's ability to perform medium work was not supported by substantial evidence due to the additional limitations imposed by her obesity.[5]  Social Security regulations classify medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 1567(c).  The ALJ based his conclusion that claimant could satisfy those exertional requirements primarily upon the Physical Residual Functional Capacity Assessment form completed on February 3, 2010 by state agency medical consultant Dr. Richard Whitney.[6]  Dr. Whitney indicated that claimant could occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour work day, sit for a total of about 6 hours in an 8-hour work day, and perform unlimited pushing and pulling movements.  She could only occasionally climb ladders, ropes, or scaffolds, but she had no limitations on any other postural

---

[3] Tr. 39.

[4] Tr. 40.

[5] On the date of the administrative hearing, claimant was five feet, two inches tall, and weighed 220 pounds.  Tr. 61.

[6] *See* Tr. 39 ("As for the opinion evidence, the undersigned gives great weight to the determination by a state agency medical consultant that the claimant can perform a limited range of medium work.  That determination is consistent with the objective, clinical findings from treating and consulting examiners.").

movements, including climbing ramps and stairs, stooping, kneeling, crouching, and crawling. Claimant had no manipulative, visual, or communicative limitations. Her environmental limitations included avoiding concentrated exposure to extreme heat and cold and avoiding all exposure to unprotected heights. Dr. Whitney stated that he "would expect work limitation due to obesity."[7]

As claimant points out, Dr. Whitney's assessment (and, consequently, also the ALJ's) appears to have an internal inconsistency. Dr. Whitney advised claimant to avoid *all* exposure to unprotected heights, but he nonetheless indicated that she could occasionally climb ladders, ropes, and scaffolds. The assessment of ability to climb ladders, ropes, and scaffolds also was inconsistent with the assessment of the consultative examiner, Dr. Brad Ginevan, that claimant had a waddled gait and an unbalanced heel-toe walk.[8] Those inconsistencies do not warrant reversal of the ALJ's decision, however. Even if the court assumes that claimant could *never* climb ladders, ropes, or scaffolds, there is no indication that those limitations would prevent her from performing her past relevant work as a teacher, assistant principal, and principal.

Claimant also asserts that the ALJ should have given Dr. Whitney's assessment

---

[7] Tr. 487-93.
[8] *See* Tr. 484.

only little weight, because he was not a non-examining, reviewing physician. Contrary to claimant's suggestion, the opinions of state agency medical examiners are entitled to substantial consideration. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency physician, the ALJ should consider such a physician to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence."). Here, because Dr. Whitney's assessment was consistent with the remainder of the medical evidence, there was no reason for the ALJ to discredit his opinion.

Finally, claimant asserts that Dr. Whitney's assessment (and, consequently, also the ALJ's) otherwise failed to properly take into account her obesity. An ALJ's duties in evaluating the effect of a claimant's obesity on her residual functional capacity are set forth in Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as

5

climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects

and Caring for yourself).

> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1P, 2000 WL 628049, at *6-7.

The ALJ specifically mentioned this Ruling in his administrative decision. He noted that claimant had identified medical conditions, including diabetes, hypertension, and sleep apnea, that could be exacerbated by obesity. Even so, he concluded that the medical records did not reflect severe limitations in claimant's ability to perform work-related activities, even taking into consideration the additional effect of claimant's obesity. That conclusion was supported by substantial evidence.

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 27th day of September, 2012.

_____
United States District Judge